UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                  Civil No. 19-cr-35-01-JL
                                            Opinion No. 2019 DNH 117P

Romeo Tyree Hayes

**MEMORANDUM ORDER**

    Ahead of defendant Romeo Hayes's jury trial on one count of assault in a federal prison, Hayes and the prosecution each filed two evidentiary motions in limine. The court orally ruled on these four motions at the final pretrial conference, but this order serves to set forth the basis for (and in some cases, refine and clarify) the rulings in further detail. See, e.g., United States v. Joubert, 980 F. Supp. 2d 53, 55 n.1 (D.N.H. 2014), aff'd, 778 F.3d 247 (1st Cir. 2015) (citing In re Mosley, 494 F.3d 1320, 1328 (11th Cir. 2007) (noting a district court's authority to later reduce its prior oral findings and rulings to writing)).

    The court reminds the parties that these rulings are made without prejudice to revisiting particular issues in response to circumstances that might arise during trial. Furthermore, these rulings are limited to grounds argued in the parties' filings and raised at the final pretrial conference and oral argument. The court reserves the right to assess other factors at trial,

such as hearsay, authenticity, and best evidence, see Fed. R. Evid. 800 et seq., 900 et seq., and 1000 et seq., and where appropriate, arguments and grounds not raised by counsel. To the extent the court here rules that evidence may be admitted for a limited purpose, see Fed. R. Evid. 105, it will give the jury a limiting instruction upon the request of counsel at trial.

I.  **Background**

This is an assault case, not usually brought in federal court, but for the fact that the alleged assault occurred in a federal prison. The indictment alleges that Hayes, while incarcerated at FCI-Berlin, knowingly assaulted a fellow inmate, Lorence Smith, resulting in serious bodily injury to Smith in that Smith's nasal bones, mandible, and pterygoid plate were fractured. Hayes anticipates asserting a claim of self-defense.[1]

The prosecution moves to preclude Hayes from introducing testimony regarding specific instances of the victim's prior conduct and from introducing certain statements made by Hayes after the alleged assault. The defendant moves to preclude the prosecution from impeaching his testimony with his prior felony

---

[1] See Def.'s Obj. to Gov.'s Mot. in Limine to Exclude Def.'s Hearsay Statements (doc. no. 37) at 2.

convictions and from introducing a recorded section of a prison phone call he purportedly made after the alleged assault.

II. **Analysis**

   A.   **Specific instances of victim's prior conduct**

The prosecution moves to exclude evidence and testimony regarding specific instances of the alleged victim's past conduct, including Smith's prison disciplinary records, which memorialize sanctions by the Bureau of Prisons ("BOP") for fighting other inmates and possessing weapons prior to the alleged assault.[2] The prosecution argues that such evidence is inadmissible "character" and "prior bad acts" evidence. The court disagrees in part. Although evidence of specific instances of conduct is inadmissible to prove Smith's propensity for violence or that Smith acted in accordance with such a propensity on this occasion, some such evidence may be admissible to corroborate Hayes's testimony regarding Smith's violent reputation, in order to prove the reasonableness of Hayes's belief that Smith posed a threat to him.

Ordinarily, evidence of a person's character and specific-conduct propensity is inadmissible under Rule 404. However, in a criminal case, "a defendant may offer evidence of an alleged victim's pertinent trait" in the form of "an opinion" or

---

[2] Document no. 24.

3

"testimony about the [victim's] reputation." Fed. R. Evid. 404(a)(2)(B) and 405(a). It is important to understand that Rule 404 governs whether, and under what circumstances, character and prior-bad-acts evidence is admissible, while Rule 405 governs how, and by what method, such evidence may be elicited and introduced.

Under these rules, a criminal defendant may testify about his knowledge of the alleged victim's reputation for violence at the time of the alleged assault, Fed. R. Evid. 405(a), as that is an exception to the general rule prohibiting character evidence regarding victims' "pertinent" character traits. See Fed. R. Evid. 404(b)(2)(B). A defendant may also offer evidence of "specific instances" of an alleged victim's conduct to prove a character trait when it is not only pertinent (see id.), but "an essential element" of a charge, claim, or defense. Fed. R. Evid. 405(b). But an alleged victim's dangerous or violent character, while certainly "pertinent" under Rule 404, is not normally or necessarily an "essential element" of self-defense under Rule 405. United States v. Gulley, 526 F.3d 809, 819 (5th Cir. 2008) ("a self-defense claim may be proven regardless of whether the victim has a violent or passive character"); United States v. Keiser, 57 F.3d 847, 857 (9th Cir. 1995) ("the victim's violent nature is not essential to a successful claim of self-defense"); First Circuit Pattern Criminal Jury

4

Instructions 5.04 (elements of self-defense are that (1) defendant acted under an immediate threat of serious bodily injury or death; (2) had a well-grounded belief that the threat would be carried out; and (3) had no reasonable opportunity to escape, or otherwise frustrate the threat). Hayes thus may not submit extrinsic evidence of Smith's violent acts in order to prove Smith's character or to prove that he more likely acted in a dangerous or violent manner in his encounter with the defendant giving rise to this charge.

But Hayes may submit evidence of Smith's violent acts solely to corroborate his Rule 405(a) testimony regarding his knowledge and understanding of Smith's violent character. In other words, Hayes may not submit testimony or records of specific instances of Smith's conduct to directly prove Smith's character or to prove that Smith in fact committed those acts, but he may submit evidence that directly supports the credibility of his testimony regarding Smith's reputation or his opinion of Smith's character. Hayes thus may only submit evidence of specific instances of Smith's conduct that directly corroborate his own testimony, including those portions of Smith's prison disciplinary records that directly corroborate Hayes's professed knowledge of Smith's dangerous and violent

5

character.³  Hayes may either submit a proffer or, if he chooses, submit himself to a *voir dire* examination outside of the presence of the jury to determine the scope of this conditionally admissible evidence for this limited purpose.  See Fed. R. Evid. 104.

The prosecution's motion is thus granted except as to evidence of specific instances of Smith's conduct that is offered only to corroborate Hayes's testimony regarding Smith's character, as it pertains to his assertion of self-defense.  If requested, the court will give a limiting instruction to ensure that the jury does not consider the evidence as propensity evidence to show that the alleged victim acted in a violent or dangerous manner during the confrontation in question.  See Fed. R. Evid. 105; Fed. R. Evid. 404(a).

   **B.   Possible hearsay statements by defendant**

The prosecution moves to preclude Hayes from submitting evidence of two separate statements Hayes made to prison

---

³ Hayes argues that such evidence is also admissible as to his credibility under Rule 404(b), because the list of permissible purposes under that subsection is non-exhaustive.  Fed. R. Evid. 404(b) ("Evidence of a crime wrong or other act . . . may be admissible for another purpose, such as proving motive, opportunity, intent, knowledge, identity, absence of mistake, or lack of accident."); see United States v. James, 169 F.3d 1210, 1215 (9th Cir. 1999) (admitting under 404(b) records of victim's prior acts to corroborate defendant's credibility in self-defense case).  Adopting this route to admissibility would not alter the scope of admissible evidence.

personnel after the alleged assault.[4] First, directly after the assault prison employees escorted Hayes from the scene to the facility's Secure Housing Unit. During the walk, Hayes stated without prompting or questioning that he "had no choice."[5] Second, several weeks after the alleged assault, Special Investigative Services ("SIS") Tech Glenn Brown interviewed Hayes. Hayes told SIS Tech Brown that "I was protecting myself."[6] The prosecution, which represents that it will not introduce those statements at trial (removing them from the category of adverse-party admissions under Rule 801(d)(2)), argues that both statements are inadmissible hearsay. See Fed. R. Evid. 801, 802.

Hayes argues that his "had no choice" statements while being led away from the scene of the alleged assault are admissible as "present sense impressions" or "excited utterances," exceptions to the Rule Against Hearsay. See Fed. R. Evid. 803(1), 803(2). The court agrees that the statements are excited utterances. That exception requires "(1) a startling event or condition; (2) a statement made while the declarant was subject to the influence of the event or

---

[4] Document no. 36.

[5] See Statement of Supervisor Laflamme (doc. no. 37-1); Statement of Foreman Knall (doc. no. 37-3).

[6] Interview report (doc. no. 37-2).

condition; and (3) a relation between the statement and the event or condition." United States v. Bailey, 834 F.2d 218, 228 (1st Cir. 1987). The defendant's statements were made just after the alleged assault, and concerned those events. One of the correctional officers who escorted Hayes describes him as "tense and trembling" at this time, to the degree that they inquired about his ability to maintain composure while walking.[7] Hayes was thus still subject to the influence of the recent events when he made the statement. The statements meet the requirements of the hearsay exception.[8]

The prosecution argues that the statement does not fit within the rationale of the excited utterance exception because it is self-serving. Both cases it cites in support involve a defendant's statements denying responsibility that allegedly fell within the exception because of excitement caused by the discovery of contraband by the police. United States v. Esparza, 291 F.3d 1052, 1055 (8th Cir. 2002) ("Police discovery of contraband is not ordinarily the kind of 'startling event' to which this exception applies."); United States v. Sewell, 90

---

[7] Statement of Foreman Knall (doc. no. 37-3).

[8] The court is skeptical, under these particular circumstances, that Hayes was "describing or explaining an event or condition" within the meaning of a present sense impression, but need not reach that issue because the statement is admissible as an excited utterance. See Fed. R. Evid. 803(1).

8

F.3d 326, 327 (8th Cir. 1996).[9] Hayes's excitement stemmed not merely from "learning of the evidence against him," but from the alleged physical confrontation. See Sewell, 90 F.3d at 327. The apparently self-serving nature of Hayes's statement may affect its weight as evidence, but does not preclude its admission.

Hayes's statement to SIS Tech Brown, several weeks after the alleged assault, is hearsay and will not be admitted, see Fed. R. Evid. 801, 802, except, potentially, to rehabilitate Hayes's credibility as a witness as a prior consistent statement under Rule 801(d)(1)(b). Again, the interview statement is not the statement of a party opponent because Hayes, and not the U.S. Attorney, is seeking to introduce it. See Fed. R. Evid. 801(d)(2). But if Hayes's credibility as a witness is attacked on another ground and the statement made to SIS Tech Brown is consistent with Hayes's testimony, under the appropriate circumstances it will be admissible to rehabilitate Hayes's credibility as a witness. See Fed. R. Evid. 801(d)(1)(B).

---

[9] Similarly, United States v. Pursley states that "the presence or absence of self-interest" is a factor considered in "determining whether a declarant made a statement under the stress of a particular event." 577 F.3d 1204, 1220 (10th Cir. 2009). Here, the strong, documented evidence that Hayes was "under the stress" of the recent events outweighs any effect of the presence of self-interest.

The prosecution's motion is denied as to Hayes's statement directly after the alleged assault, and taken under advisement as to the statement to SIS Tech Brown, in that the latter statement may become admissible if Rule 801(d)(1)(B) is triggered at trial.

C.  **Defendant's prior convictions**

Hayes moves to prohibit the prosecution from impeachment with evidence of his prior District of Columbia convictions for Unauthorized Use of a Vehicle During a Crime of Violence, Destruction of Property, Assault with intent to Kill, and Possession of a Firearm During a Crime of Violence.[10]

Generally, when a defendant takes the witness stand, the prosecution can challenge the defendant's "character for truthfulness by evidence of a criminal conviction . . . for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year" if "the probative value of the evidence outweighs its prejudicial effect to that defendant."  Fed. R. Evid. 609(a)(1)(B).  In these situations, the United States bears the burden of showing that the evidence's probative value outweighs its prejudicial effect. See Fed. R. Evid. 609(a) advisory committee's note to 1990 amendment.

---

[10] Document no. 35.

"Rule 609 is premised on 'the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" Walden v. Georgia-Pac. Corp., 126 F.3d 506, 523 (3d Cir. 1997) (quoting Cummings v. Malone, 995 F.2d 817, 826 (8th Cir. 1993)). Hayes's state convictions, while certainly recent enough to reflect on his credibility in the general sense contemplated by Rule 609, are not the type of deception-oriented crimes that implicate dishonesty in particularly probative way. Further, they are crimes of violence that could substantially prejudice a defendant's case, especially where, as here, the defendant stands charged with a violent crime. See Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967) ("In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand . . . generally have little or no direct bearing on honesty and veracity."). And given that Hayes is currently incarcerated with the Bureau of Prisons, the jury will undoubtedly know that he has been convicted of a felony on a prior occasion, regardless of any impeachment with prior convictions.

The prosecution has not met its burden of establishing that the prior conviction impeachment would be more probative than

prejudicial.  Hayes's motion *in limine* to exclude the details of his prior convictions is GRANTED.

### D. Prison telephone call recording

Next, Hayes asks the court to exclude a 15-minute audio recording of a February 9, 2019 "jailhouse" phone conversation, during which Hayes purportedly challenges or corrects an unidentified woman's understanding of the prison confrontation at issue here.[11]  Hayes asserts that the entire recording should be excluded under Fed. R. Evid. 403 and 901 because it is mostly unintelligible, and because the woman conversing with him on the telephone has not been identified by the prosecution.  Further, he asserts that the woman's statements constitute inadmissible hearsay and violate the Sixth Amendment's Confrontation Clause.  Under these circumstances, the court disagrees.

Fed. R. Evid. 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Here, the probative value of the 45-second portion the United States intends to introduce outweighs any of these dangers, "even though portions of the recordings are inaudible,"

---

[11] Document no. 39.

12

see United States v. Doyon, 194 F.3d 207 (1st Cir. 1999), and the United States does not intend to play the entire tape, see United States v. Lentz, 524 F.3d 501 (4th Cir. 2008) (allowing government to introduce only one portion of jail call and denying defendant's argument that Rule 106 required admission of entire call, including self-serving exculpatory comments by defendant).

Circuit precedent holds that the admissibility of a partially inaudible audio recording – and "whether the inaudible parts are so substantial as to make the rest more misleading than helpful" – rests within the discretion of the district court. United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986); see also United States v. Panzardi-Lespier, 918 F.2d 313, 318 (1st Cir. 1990). Having reviewed the recording, the court finds that the early portion of the tape clearly records Hayes's purported admission that at the time of the call he was confined in "the hole" because he fought with another inmate, as well as his denial that he was stabbed. These details are corroborated by other evidence in the case, as were the recorded statements in Doyon. The fact that portions of the call thereafter may be inaudible has little or no tendency to prejudice Hayes's case or confuse the jury, as Hayes has not argued (and it does not appear) that these portions are relevant to the prosecution's case or Hayes's defense. As such, the audible portions of the

recording remain highly probative relative to any potential prejudice or confusion.

In addition, the court has given both parties leave to provide the jury with a transcript to aid them in following the audio recording, thus minimizing potential for confusion.  See Panzardi-Lespier, 918 F.2d at 318 (recognizing that "transcripts are used to assist the jury in following tape recording playbacks"); see also United States v. Pion, 25 F.3d 18, 21 (1st Cir. 1994) (recognizing defendant's right to introduce own transcript when parties do not stipulate).[12]  In his papers and at oral argument, Hayes maintained that a transcript is insufficient to aid the jury in following the unintelligible or indecipherable parts of the audio recording, and that the prosecution's proffered transcript of the call's first minute contains inaccuracies and could impermissibly bolster the United States' theory of the case.  To address these concerns, the court grants Hayes the following accommodation:  his counsel can work with the government to create a stipulated transcript that more accurately reflects his purported conversation with the unidentified woman, or if no stipulation can be reached, he can

---

[12] Of course, the defendant has no obligation to provide any evidence, or any information, to the jury at trial.  So while the court allows him to provide a transcript, it can not and does not order him to do so.  U.S. Const. amend. V.

14

submit his own alternative transcript to aid and augment the jury's understanding of the audio recording.

To be clear, the sole purpose of the transcript(s) is to aid the jury's understanding of the recording.  See supra n.12. As such, the transcript(s) will not be admitted as evidence, see Fed. R. Evid. 1002 (best evidence rule), and the jury will be properly instructed that to the extent any transcript differs from their perception of the recording, the recording controls. See United States v. Rengifo, 789 F.2d 975, 983 (1st Cir. 1986).

As to the defendant's authentication-based objection, the prosecution represented at oral argument that it will properly authenticate the recording at trial per Rule 901, which requires that a proponent of an item of evidence "produce evidence sufficient to support a finding that the item is what the [United States] claims it is." Fed. R. Evid. 901.  Here, the prosecution has explained that it will admit the recording through a Bureau of Prisons employee who will "testify about the prison's policy of recording telephone calls, software used to record calls, the procedures he followed to obtain the recording of the call, . . . and the accuracy of the copy of the recording played at trial." Id.; see also Fed. R. Evid. 1001-03.  The BOP employee will also testify that to use the phone, a prisoner must enter a specific code unique to him or her, and that Hayes's code was entered for the audio recording in question.

Hayes's counsel agreed at oral argument that this foundation is sufficient to authenticate the recording under Rules 901 and 902.

Finally, the court finds that the unidentified woman's statements do not constitute hearsay in this case and thus do not violate Hayes's rights under the Confrontation Clause. The Confrontation Clause provides every person accused of a crime has "the right to confront a witness against him or her in a criminal action." U.S. Const. amend. VI. But here, the Confrontation Clause is not implicated because the United States merely intends to introduce the woman's statements to provide context for Hayes's purported part of the conversation and not to prove their truth. See Fed. R. Evid. 801(c)(2). In this regard, the use of a non-testifying person's statements on an audio recording is well-traveled ground.[13] In United States v. Hicks, for example, the Court of Appeals affirmed a trial court's decision to admit a jail call between a defendant and a non-testifying individual because her statements were "admitted to provide context for the statements of appellant … [and] did not implicate the Confrontation Clause." 575 F.3d 130 (1st Cir. 2009). Likewise, in United States v. Walter, the Court of

---

[13] In fact, her statements do not support the U.S. Attorney's theory of the case, and more closely support the defendant's version of events.

Appeals affirmed the introduction of a non-testifying informant's recorded statements because they were offered for the nonhearsay purpose "to provide context for the admissions of [defendant]." 434 F.3d 30, 34 (1st Cir. 2006).

The context here is simply that Hayes's statements were responses to the words uttered by the woman speaking to him. Without the context provided by her words, Hayes's statements would make little sense to the jury. If requested, the court will give an appropriate limiting instruction that the woman's words may not be considered for their truth. See Fed. R. Evid. 105. Alternatively, the parties are ordered, if Hayes so requests, to redact the woman's statements from the audio recording and corresponding transcripts.

On this record, the court denies the motion to exclude the audio recording of the February 9, 2019 phone conversation without prejudice.

### III. Conclusion

The prosecution's motion to preclude evidence regarding specific instances of the victim's prior conduct[14] is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART, as discussed supra. The prosecution's motion to preclude alleged hearsay statements[15]

---

[14] Document no. 24.

[15] Document no. 36.

is DENIED as to the defendant's statements on January 30 and TAKEN UNDER ADVISEMENT as to the defendant's statements on February 20. Hayes's motion to preclude the government from impeaching him with his prior convictions[16] is GRANTED. And Hayes's motion to exclude the jailhouse phone conversation[17] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 25, 2019

cc: Anna Z. Krasinski, AUSA
    Georgiana L. Konesky, AUSA
    Jeffrey S. Levin, Esq.

---

[16] Document no. 35.

[17] Document no. 39.